**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
Facsimile: (312) 527-0484

**JENNER & BLOCK LLP**
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Phone: (213) 239-5100
Facsimile: (213) 239-5199

Attorneys for Defendant
Kellogg Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, ADINA RINGLER, and CHRISTIAN LEMUS as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY,<br><br>Defendant. | Case No. 3:21-cv-7388-VC<br><br>The Honorable Vince Chhabria<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date: N/A<br><br>Hearing Time: N/A<br><br>Courtroom: N/A |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Kellogg Company hereby moves to dismiss the complaint filed by Plaintiffs Molly Brown, Adina Ringler, and Christian Lemus pursuant to Federal Rule of Civil Procedure 12(b)(6), and each claim asserted therein, because it is preempted by federal law and therefore fails to state a plausible claim on which relief can be granted.

Kellogg's motion to dismiss is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, and any additional briefing or argument the Court may request. Pursuant to the Court's order setting a briefing schedule on this motion, Kellogg has also attached and re-submitted the briefing submitted by its counsel and a transcript of the hearing on Kashi's motion to dismiss in the related action *Nacarino v. Kashi Company*, Case No. 3:21-cv-7036-VC, which it incorporates by reference herein.[1]  *See* ECF No. 35.

DATED:  February 28, 2022

JENNER & BLOCK LLP

By:   /s/  Dean N. Panos
        Dean N. Panos

Attorneys for Defendant
Kellogg Company

---

[1] Given the Court's express directive not to repeat the arguments Kashi made in *Nacarino* (*see* ECF No. 35), Kellogg re-submits these materials solely for the purpose of ensuring that they form part of the appellate record in the event this Court dismisses Plaintiffs' lawsuit and Plaintiffs appeal that ruling.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

This putative class action is a carbon copy of *Nacarino v. Kashi Company*, --- F. Supp. 3d ----, 2022 WL 390815 (N.D. Cal. 2022), which this Court dismissed with prejudice less than three weeks ago. Here, as in *Nacarino*, Plaintiffs allege that Kellogg's representations about the amount of protein in its Bear Naked, RxBar, Special K, and Morningstar Farms products are false and misleading because those products "do not deliver the amount of protein that the labels claim." Compl. ¶ 3. But Plaintiffs do not dispute that Kellogg calculates the number of grams of protein in each product—which it states in both the Nutrition Facts panel and on the front of each product—using the FDA-approved nitrogen method. *See* 21 C.F.R. § 101.9(c)(7) ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food."). Nor do Plaintiffs dispute that Kellogg complies with the FDA's requirement to state the percent of daily value of protein, which Kellogg calculates using the protein digestibility corrected amino acid score ("PDCAAS"), in the Nutrition Facts panel. Instead, Plaintiffs allege—as the plaintiffs did in *Nacarino*—that Kellogg's front-label protein representations (such as "16g Protein" or "Protein 15g") are misleading because do not account for the quality and digestibility of the protein in its products.

As this Court made clear in *Nacarino*, that theory is preempted by federal law. There, the plaintiffs (represented by Plaintiffs' counsel here) alleged that virtually identical protein claims on the labeling of Kashi GO cereal, such as "11g Protein," were misleading because "the methodology Kashi uses to calculate the figure—the nitrogen-content method—overstates the amount of protein per serving." *Nacarino*, 2022 WL 390815, at *3. According to the plaintiffs, Kashi "uses low-quality protein that cannot be absorbed by the human body, making it misleading to use a figure outside the Nutrition Facts label that has not been adjusted for protein digestibility." *Id.* And while Kashi argued that its protein claims were permitted by 21 C.F.R. § 101.13(i)(3), which authorizes nutrient content claims that do not "implicitly characterize the level of the nutrient of the food" and are "not false or misleading in any respect," the plaintiffs argued that this regulation did not authorize Kashi's protein claims because they were "false or misleading." *See id.*

The Court held that this theory was preempted because the "FDA regulations permit the statements that Kashi makes on the face of its products." *Id.* In so holding, the Court rejected the plaintiffs' contention that Kashi's protein claims were "misleading" under the applicable FDA regulations, which "authorize the nitrogen-content method and do not require manufacturers to adjust statements of protein quality for

digestibility." *Id.* As the Court explained, "this authorization comes from section 101.9(c)(7), which says that a manufacturer may use the nitrogen-content method without quality adjustment when stating the amount of protein in the Nutrition Facts label." *Id.* "Against the backdrop of this protein-specific provision," the Court concluded, "the general language of section 101.13 cannot be interpreted as proclaiming that it is 'false or misleading' to use the same statement—'11g Protein'—on the front of the box as is authorized in the Nutrition Facts label." *Id.*

The Court also rejected the plaintiffs' argument that the FDA's requirement to state the "corrected amount of protein" in the Nutrition Facts panel if a protein claim appears on the label (*see* 21 C.F.R. § 101.9(c)(7)(ii)) necessarily implied that "statements of protein quantity would be misleading without this additional context." *Nacarino*, 2022 WL 390815, at *4. The Court concluded that this was "not a plausible reading of the regulations," as it would require the Court to "find that an FDA-approved protein measurement technique is inherently misleading." *Id.* "A better reading," the Court explained, "is that the FDA recognizes that in situations where consumers are drawn to a product for its protein content . . . consumers deserve additional information in the Nutrition Facts panel." *Id.* And while the Court noted that it "would not have ruled differently absent the new guidance," it emphasized that the FDA had issued guidance in early 2022 in which it "clearly stated that its regulations do not require protein content statements to adjust for digestibility, demonstrating that 'uncorrected' claims are not inherently misleading within the meaning of the regulation." *Id.* at *4 & *4 n.4. "Given the FDA's express approval of the nitrogen-content method and failure to require manufacturers to adjust for protein quality when stating the amount of protein in the nutrition label," the Court found that "it does not make sense to read the regulations as barring manufacturers from making identical statements elsewhere on their packaging."[2] *Id.* at *5.

This case is indistinguishable from *Nacarino*. The labeling claims at issue here do not characterize the amount of protein in Kellogg's products. Instead, like the protein claims at issue in *Nacarino*, they

---

[2] Shortly after this Court issued its ruling in *Nacarino*, Judge Seeborg dismissed a virtually identical protein labeling case filed by Plaintiffs' counsel here. *See Chong v. KIND LLC*, --- F. Supp. 3d ----, 2022 WL 464149 (N.D. Cal. 2022). Relying on this Court's reasoning in *Nacarino*, Judge Seeborg agreed that "a correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility." *Id.* at *3. In so holding, Judge Seeborg expressly acknowledged that his earlier ruling in *Minor v. Baker Mills, Inc.*, No. 20-2091, 2020 WL 11564643 (N.D. Cal. Nov. 12, 2020) was "incorrectly decided." *Id.* at *1.

state only the *amount* of protein in those products—such as "16g Protein" on Morningstar Farms Veggie Grillers Original patties, "Protein 15g" on Special K Original Multi-Grain Touch of Cinnamon cereal, "12g Protein" on Rx Apple Cinnamon oats, and "11g Protein" on Bear Naked Honey Almond granola.  *See* Compl. ¶ 17.  Moreover, Plaintiffs do not allege—and cannot truthfully allege—that those statements are inconsistent with the amount of protein stated in the Nutrition Facts panel, which Kellogg calculated using the FDA-approved nitrogen method.  Instead, Plaintiffs allege that these protein claims are misleading because Kellogg's "use of low quality proteins, even in combination with some higher quality proteins, means that [Kellogg's products] actually provide far less protein to humans than their labels claim."  *Id.* ¶ 31.  That is the exact theory of deception this Court found preempted in *Nacarino*.

For the reasons this Court articulated in its order dismissing the *Nacarino* action (as well as the arguments set forth in Kashi's briefing, which Kellogg incorporates by reference, *see* ECF No. 35), Plaintiffs' theory of deception is squarely preempted by federal law.  And "because the defect with [Plaintiffs'] case lies in the legal theory, not the factual allegations," Kellogg respectfully requests that the Court dismiss this action with prejudice.  *Nacarino*, 2022 WL 390815, at *1.

DATED:  February 28, 2022                               JENNER & BLOCK LLP

                                                By:      /s/   Dean N. Panos
                                                              Dean N. Panos

                                                        Attorneys for Defendant
                                                        Kellogg Company